# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ATAIN INSURANCE CO.,<br>            Plaintiff, | CIVIL ACTION |
| v. | |
| XCAPES AND CRAIG LESSER,<br>            Defendants. | NO.  2:19-cv-05346 |

## MEMORANDUM OPINION

Plaintiff Atain Insurance Company, a citizen of Texas and Michigan, moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), seeking a declaration that it has no duty to defend or to indemnify Defendant-insureds Xcapes and Craig Lesser (collectively, "Xcapes"), citizens of Pennsylvania, with respect to lawsuits filed by Yuri and Elza Tyshko against Xcapes.[1]  For the reasons that follow, Atain's motion will be granted.

## I.   BACKGROUND

In August 2013, Xcapes, a home improvement contractor based in Wrightstown, Pennsylvania, purchased commercial general liability insurance from Atain.  Then, in the fall of 2013, Xcapes contracted with the Tyshkos to perform $28,300 of masonry work on the couple's Newtown, Pennsylvania home.  The Tyshkos paid Xcapes in full in October, and renovations began shortly thereafter.  After noticing that "the sidewalk work, front wall work, and side walls were defective," the Tyshkos "complained [of] workmanship deficiencies" with Xcapes's work.  Lesser acknowledged the "workmanship issues."

Despite their initial dissatisfaction, the Tyshkos entered into a second contract with Xcapes for $41,700 of work to their pool and patio area in March 2014.  And, in May 2014,

---

[1] On February 25, 2020, this Court denied the Tyshkos' motion to intervene in the coverage dispute between Atain and Xcapes.  *Atain Ins. Co. v. Lesser*, 2020 WL 919698 (E.D. Pa. Feb. 25, 2020).

Lesser executed a "promissory note" guaranteeing that he would remedy the issues with the

October work by "rip[ping] up and redo[ing] the sidewalk at the front of the house including the

landing due to stone being loose and not properly adhered to the base concrete." The Tyshkos

paid Xcapes $28,000 towards the second contract, but, after again becoming dissatisfied with

Xcapes's work, they refused to pay the remainder of the balance. As a result of this payment

dispute, Xcapes stopped work, "leaving the pool and patio area in complete disrepair." The

repair work agreed to in May was also left unfinished. A flurry of state court litigation ensued,

which ultimately resulted in a consolidated proceeding ("the underlying lawsuit") alleging

breach of contract (Count I), unjust enrichment/quasi contract (Count II), as well as violations of

the Home Improvement Consumer Protection Act (Count III) and of the Unfair Trade Practices

and Consumer Protection Law ("UTPCPL") (Count IV). In sum, the underlying lawsuit alleges

that the Tyshkos were harmed as a result of Xcapes's failure to perform the agreed-upon work,

both in that they lost money by paying for work that was never done, and in that their property

was damaged by work that was done incorrectly, or started but not finished.

     Xcapes sought coverage from Atain under its general liability policies with respect to the

underlying lawsuit. While Atain "has agreed to and is defending Xcapes under a reservation of

rights to deny coverage and withdraw from defense," Atain now "seeks to confirm that it has no

duty to defend or indemnify Xcapes."

## II.   LEGAL STANDARD

     Under Federal Rule of Civil Procedure 12(c): "judgment will not be granted unless the

movant clearly establishes that no material issue of fact remains to be resolved and that he is

entitled to judgment as a matter of law. In reviewing the grant of a Rule 12(c) motion, [a court]

must view the facts presented in the pleadings and the inferences to be drawn therefrom in the

2

light most favorable to the nonmoving party." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988) (internal quotations and citations omitted). Though generally a "district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings[,] an exception to this general rule provides that a document integral to or explicitly relied upon in the complaint"—such as a contract, in a contractual disputed—"may be considered without converting the motion to dismiss into one for summary judgment." *Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 256 n.5 (3d Cir. 2004), as amended (Mar. 8, 2004) (internal quotations, citations and alterations omitted). Because no material facts are in dispute, this action is appropriate for resolution under Rule 12(c).

## III.    DISCUSSION[2]

Whether coverage exists under an insurance policy is a question of law, *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005), and it is the insured's burden to prove the existence of such coverage under the policy, *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009). "Under Pennsylvania law,[3] an insurer has a duty to defend if the complaint filed by the injured party potentially comes within the policy's coverage." *Sikirica*, 416 F.3d at 220. In determining whether an insurer has a duty to defend, a court must first "determin[e] the scope of coverage under a policy" and then "examine the complaint in the underlying action to determine whether it triggers coverage." *Id.* at 226; *see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 329-30 (2006) ("It is well established that an insurer's duties under an insurance policy are triggered by the

---

[2] The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is greater than $75,000.

[3] As a federal court sitting in diversity, the Court here applies Pennsylvania substantive law, *see Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), and is bound by the Pennsylvania Supreme Court's interpretation of Pennsylvania law, *see In re Future Holdings Corp.*, 842 F.3d 247, 253 (3d Cir. 2016).

language of the complaint against the insured.").  To trigger this duty, the underlying complaint

need contain but a single allegation falling within the scope of the policy's coverage.  *See TELA*

*Bio, Inc. v. Fed. Ins. Co.*, 313 F. Supp.3d 646, 655 (E.D. Pa. 2018), *aff'd*, 761 F. App'x 140 (3d

Cir. 2019) ("The duty to defend is triggered where the underlying complaint makes *at least one*

allegation that falls within the scope of the policy's coverage." (emphasis added)); *see also*

*Allstate Prop. & Cas. Ins. Co. v. Winslow*, 66 F. Supp.3d 661, 670 (W.D. Pa. 2014) (explaining

that "[w]here a complaint makes at least one allegation that falls within the scope of a policy's

coverage, the insurer has an obligation to defend its insured against all claims until there is no

possibility of recovery for a covered claim" and collecting Pennsylvania cases to this effect).

Though "[t]he duty to defend is a distinct obligation, different from and broader than the duty to

indemnify[, b]ecause the duty to defend is broader than the duty to indemnify, there is no duty to

indemnify if there is no duty to defend." *Sikirica*, 416 F.3d at 225.  In sum, "[b] the duty to

defend and the duty to indemnify flow from a determination that the complaint triggers

coverage." *Id.* at 226 (internal quotations omitted).

Under the policies at issue, Atain assumed "the right and duty to defend the insured

against any 'suit' seeking . . . damages" for "property damage," but it disclaimed the "duty to

defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this

insurance does not apply."  Atain also agreed to pay "those sums that the insured becomes

legally obligated to pay as damages because of . . . 'property damage' to which this insurance

applies," with "property damage" defined as "[p]hysical injury to tangible property, including all

resulting loss of use of that property. . . .; or . . . [l]oss of use of tangible property that is not

physically injured."  However, the policies limited coverage for "property damage" to instances

4

of damage "caused by an 'occurrence,'" where an "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Atain argues that it has neither a duty to defend nor indemnify Xcapes in the underlying lawsuit because these suits "do not allege 'property damage' caused by an 'occurrence,' as required for coverage under the Policies." Specifically, Atain argues that the Tyshkos' claims arise from allegations of "breach of contract and faulty workmanship," and that property damage arising from breach of contract or faulty workmanship does not qualify as an "occurrence." Xcapes disagrees, arguing that its claims do not exclusively arise from breach of contract or faulty workmanship.

Under Pennsylvania law, property damage caused by faulty workmanship does not qualify as an "occurrence." *Kvaerner*, 589 Pa. at 335; *see also Frederick Mut. Ins. Co. v. Hall*, 752 F. App'x 115, 118 (3d Cir. 2018) (explaining that "'[a] liability policy does not provide a guarantee of the policyholder's workmanship'" (quoting *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 567 (1983)). That is because "the definition of 'accident' required to establish an 'occurrence' . . . cannot be satisfied by claims based upon faulty workmanship[, which] simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident' or its common judicial construction." *Kvaerner*, 589 Pa. at 335-36. Similarly, Pennsylvania law excludes coverage for breach of contract claims, which, like damages arising from faulty workmanship, are not considered sufficiently fortuitous to be accidental. *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 597 (3d Cir. 2009); *see also Redevelopment Auth. of Cambria Cty. v. Int'l Ins. Co.*, 454 Pa. Super. 374, 391 (1996) (en banc) ("The purpose and intent of [a general liability] policy is to protect the insured from

liability for essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking.").

Here, the underlying complaint repeatedly refers to Xcapes' "workmanship deficiencies," "workmanship issues," and "defective" work, as well as to work that was "not completed," "incomplete" or not "finish[ed]," in violation of the parties' agreements.  Likewise, the specific counts also identify multiple instances of faulty workmanship or incomplete work.  To wit, in Count I, the underlying complaint states that Xcapes breached its contract with the Tyshkos "[b]y failing to perform [the work agreed to in the October 2013 and May 2014 agreements] in a reasonable and workmanlike manner."  Similarly, Count II states that Xcapes was "unjustly enriched by [the Tyshkos] having paid [Xcapes] for work which [Xcapes] did not provide, or work which the Defendants provided in a defective and unworkmanlike manner.  Count III, in addition to alleging fraud and intentional damage to the Tyshkos' property, states that Xcapes "abandon[ed] the Project."  And, Count IV states that Xcapes violated the UTPCPL by "failing to provide services and provide goods in a reasonable and workmanlike manner."

Though Xcapes does not deny that the Tyshkos have potentially made some allegations sounding in breach of contract or faulty workmanship,[4] Xcapes attempts to meet its burden of proving coverage by arguing that the underlying complaint also contains some clear-cut allegations of a covered "occurrence."  Specifically, Xcapes contends that the complaint alleges damage to property "outside the scope and areas" of the parties' agreements, and, that, by definition, such damage "would not be foreseeable or caused by faulty workmanship" and would therefore qualify as an "occurrence."  Xcapes identifies the following tasks—described in the complaint as "incomplete" and offered by the Tyshkos in support for their breach of contract

---

[4] Xcapes likewise does not argue that the allegations of fraud and intentional damage to the Tyshkos property, contained in Counts III and IV, trigger coverage.

6

claim—as outside the scope of the parties' agreement: "removal of construction debris," "replace damaged trees and bushes," "repair asphalt damages," "replace outdoor light fixtures," "replace spa control and pool lighting," "replace arch windows," "repair and stain wood deck," and "replace pool walls."  Contrary to Xcapes's argument, however, assuming that Count I does identify damage to areas outside the scope of the parties' agreements, it does not follow that damage to these areas could not, by definition, have been caused by faulty workmanship.  In *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.*, 941 A.2d 706 (Pa. Super. 2007), the Superior Court of Pennsylvania[5] found that property damage could be attributable to "faulty workmanship" even where the damage extended "beyond . . . the work product of the insured," provided the damage was "a foreseeable result" of that faulty workmanship.  *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 239 (3d Cir. 2010) (adopting and interpreting *Gambone*).  Xcapes does not discuss *Gambone* or otherwise attempt to distinguish its holding.

More fundamentally, however, Xcapes's argument that allegations of damage to property "outside the scope and areas of work for which the contracts required [Xcapes] to perform" qualifies as an "occurrence" ignores the fact that these allegations form the basis of a breach of contract claim—a type of claims which itself cannot trigger coverage under a general liability policy.  *See Nationwide*, 562 F.3d at 597.  Tellingly, each of these instances of "damages to property that are outside the areas where [Xcapes was] to perform work" is described in the underlying complaint as "constitut[ing] a breach of Invoice 1041 [*i.e.*, the first contract], 1077 [*i.e.*, the second contract] and the promissory note."  Otherwise stated, the problem with Xcapes's alleged failure to remove, replace and repair the items described in the complaint is not

---

[5] Though the Pennsylvania Supreme Court has not ruled on the issue presented in *Gambone*, "a federal court should not disregard the opinion of a state's intermediate appellate court unless convinced by persuasive data that the state's supreme court would decide differently."  *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, 519 F. App'x 90, 93 (3d Cir. 2013) (citing *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000)).

so much that Xcapes's work with respect to these items was done poorly, but that it was not done at all, allegedly in violation of the parties' agreement.  Though Xcapes contends that its contracts with the Tyshkos did not include the aforementioned removal, replacement and repairs—and that, by extension, the removal, replacement and repair issues cannot have constituted a breach of contract—this argument proves too much, in that it highlights the contractual nature of the parties' disagreement.  *See Redevelopment Auth.*, 454 Pa. Super. at 391 (explaining that general liability policies do not cover "disputes between parties to a contractual undertaking").  And, damages arising from a contractual disagreement no more qualify as occurrences than do damages arising from faulty workmanship.  *See Nationwide Mut. Ins. Co.*, 562 F.3d at 598 ("[A]n underlying claim alleging breach of contract would not trigger coverage under a CGL policy.").  Therefore, Xcapes is not entitled to coverage as a result of damages arising from their alleged failure to remove, replace and repair certain items on the Tyshko property.

## IV.    CONCLUSION

Because the underlying complaint does not contain a single allegation "potentially com[ing] within the policy's coverage," Atain is under no duty to either defend or indemnify Xcapes in connection with the Tyshkos' underlying lawsuit.  *See Sikirica*, 416 F.3d at 225. Atain's motion will therefore be granted.[6]

An appropriate order follows.


**July 20, 2020**                                    **BY THE COURT:**


                                                     **/s/Wendy Beetlestone, J.**

                                                     _____
                                                     **WENDY BEETLESTONE, J.**

---

[6] Atain argues that certain policy exclusions also entitle them to judgment on the pleadings.  Since this motion may be resolved with reference to policies' coverage, however, the Court will not reach the issue of exclusions.